IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**PAMELA D. MORTON,**

       **Plaintiff,**

v.　　　　　　　　　　　　　　　　　**Case No.: 1:21-cv-00208**

**KILOLO KIJAKAZI,**
**Acting Commissioner of the**
**Social Security Administration,**

       **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

    This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable David A. Faber, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are Plaintiff's Motion for Judgment on the Pleadings with Memorandum in Support and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in her favor. (ECF Nos. 14, 16, 18).

    The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's request for

1

judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the pleadings be **GRANTED**; the Commissioner's decision be **AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

I. **Procedural History**

In April 2019, Pamela D. Morton ("Claimant") applied for DIB and SSI, alleging a disability onset date of June 17, 2018 due to "congestive heart failure, PPE, AFIB, dyspnea, and pleurisy." (Tr. at 235-42, 260). The Social Security Administration ("SSA") denied Claimant's applications initially and upon reconsideration. (Tr. at 15). Claimant then filed a request for an administrative hearing, which was held on September 10, 2020 before the Honorable Regina L. Warren, Administrative Law Judge ("the ALJ"). (Tr. at 32-69). By written decision dated September 23, 2020, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 12-30). The ALJ's decision became the final decision of the Commissioner on February 25, 2021 when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10). Claimant filed a Motion for Judgment on the Pleadings and Memorandum in Support, and the Commissioner filed a Brief in Support of Defendant's Decision. (ECF Nos. 14, 16, 18). The time period for Claimant to file a reply to the Commissioner's brief expired. Therefore, the matter is ripe for resolution.

II. **Claimant's Background**

Claimant was 42 years old on her alleged onset date and 44 years old on the date of the ALJ's decision. (Tr. at 39). She communicates in English; earned a bachelor's

degree in marketing and management; and previously worked as a customer service representative, graphic designer, and administrative assistant. (Tr. at 39, 61, 259).

### III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this

3

determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d. 572, 574 (4th Cir. 1976).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2023. (Tr. at 17, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since June 17, 2018, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: atrial fibrillation/arrhythmias, cardiomyopathy, cardiomegaly, coronary artery disease (CAD), status post tricuspid valve replacement in 2001, chronic systolic congestive heart failure, history of pulmonary embolisms, and obesity. (Tr. at 18, Finding No. 3). The ALJ also considered Claimant's alleged migraine headaches, but determined that they were not a medically determinable impairment. (Tr. at 18).

Under the third inquiry, the ALJ concluded that Claimant did not have an

4

impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 18-20, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the individual can perform all postural activities on an occasional basis and should not climb any ladders; the individual should avoid extreme cold, extreme heat, dust, fumes, gas, pulmonary irritants and unprotected heights and hazards; the individual needs to sit/stand alternatively provided that she would not be off-task greater than 10% of the time.

(Tr. at 20-24, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could perform her past relevant work as a customer service representative, graphic designer, and administrative assistant. (Tr. at 24-25, Finding No. 6). Therefore, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 25, Finding No. 7).

### IV. **Claimant's Challenges to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision. She contends that the ALJ failed to consider the extent that she could perform activities of daily living and did not consider the side effects of her medications. (ECF No. 16 at 12-14). In response to Claimant's challenges, the Commissioner argues that the ALJ's finding of non-disability is supported by substantial evidence, and Claimant's challenges do not provide a basis for remand. (ECF No. 18 at 7-11).

### V. **Relevant Evidence**

The undersigned reviewed all of the evidence before the Court. The following information is most pertinent to Claimant's challenges.

### A. *Treatment Records*

On June 17, 2018, Claimant presented to Bluefield Regional Hospital, complaining of chest pain, and she was diagnosed with a pulmonary embolism with mild clot burden, congestive heart failure, presumed nonischemic cardiomyopathy, and ejection fraction of 20 to 25 percent. (Tr. at 357, 480). Her medical history included heart valve replacement surgery and a pulmonary embolism. (*Id.*). Claimant was discharged from the hospital three days later in stable condition. (Tr. at 336). She was prescribed medication, could resume activity as tolerated, and was cleared to return to work at Dish Network. (*Id.*). Claimant developed an atrial flutter for which she underwent an ablation procedure on October 24, 2018. (Tr. at 357). It was noted that she maintained a "moderately active lifestyle." (*Id.*). Claimant's cardiologist, Ashutosh Chandel, M.D., F.A.C.C., documented on March 18, 2020 that Claimant had fewer palpitations and normal respiratory and cardiac examinations, except for a low grade murmur. (Tr. at 513-14).

### B. *Evaluations, Opinions, and Prior Administrative Findings*

On July 17, 2019, state agency physician Palle Reddy, M.D., assessed based upon a review of the record that Claimant could perform a range of medium exertional work. (Tr. at 70-85). Dr. Chandel opined on July 31, 2019 that Claimant could not return to work due to cardiac arrythmias and cardiomyopathy. (Tr. at 472). Dr. Chandel wrote that Claimant had left ventricular ejection fraction of less than 35 percent, suffered from cardiomyopathy, and her symptoms included arrythmia, shortness of breath at rest, chronic fatigue, and palpitations. (Tr. at 474). However, Dr. Chandel declined to provide an RFC assessment. (Tr. at 475-77). On September 4, 2019, state agency physician Dominic Gaziano, M.D., assessed that Claimant could perform a range of light-level work. (Tr. at 88-107).

### C. *Claimant's Statements*

In a function report dated August 20, 2019, (Tr. at 285-88), Claimant listed that she fed her dog, but she was unable to walk him as much as she "used to." She stated that performing personal care took longer, especially if fatigued. Claimant occasionally prepared sandwiches and microwaveable foods, but her mother prepared other meals. Claimant could do laundry in moderation every two weeks and some cleaning, such as vacuuming and dishes, but she needed encouragement to do laundry because she had to climb stairs. She did not drive or shop in stores often, but could handle her finances. Claimant watched television daily, although she often fell asleep, and it was sometimes hard to focus on watching it. She went to church on Sundays, but sometimes missed church if she was not feeling well. (*Id.*).

Claimant testified during her administrative hearing on September 10, 2020 that her blood pressure and heart medications caused dizziness, "difficulty with sunlight," fatigue, occasional numbness in her hands, and hazy memory. (Tr. at 49-50). She lived with her mother, who reportedly did all of the cooking, cleaning, and grocery shopping. (Tr. at 53).

## VI. <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to

7

> justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This Court is not charged with conducting a *de novo* review of the evidence. Instead, the Court's function is to scrutinize the record and determine whether it is adequate to support the conclusion of the Commissioner. *Hays*, 907 F.2d at 1456. When conducting this review, the Court does not re-weigh evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001) (citing *Hays*, 907 F.2d at 1456)). Moreover, "[t]he fact that the record as a whole might support an inconsistent conclusion is immaterial, for the language of § 205(g) … requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" *Blalock*, 483 F.2d at 775 (citations omitted). Thus, the relevant question for the Court is "not whether the claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig*, 76 F.3d at 589).

## VII. Discussion

Claimant argues that the ALJ failed to properly consider her daily activities and medication side effects in the RFC finding and subjective symptom analyses. SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the

sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ

9

must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

The ALJ must apply a two-step process to evaluate the claimant's subjective symptoms. 20 C.F.R. §§ 404.1529, 416.929 (effective March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id.* §§ 404.1529(a), 416.929(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* §§ 404.1529(a), 416.929(a). If the intensity,

persistence, or severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id*.

In *Hines v. Barnhart*, the Fourth Circuit stated that:

Although a claimant's allegations about her pain may not be discredited

11

> solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported symptoms is supported by substantial evidence, the Court does not replace its own assessment for those of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient

12

to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ considered Claimant's statements concerning her daily activities and medication side effects. (Tr. at 21-22). The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record" for several reasons. (Tr. at 22). The ALJ discussed that Claimant had mild signs and symptoms of her impairments and conservative, routine treatment consisting of medical management since her 2018 hospitalization and ablation. (Tr. at 23). Further, as discussed below, the ALJ found that Claimant's daily activities belied her allegations of disabling functional limitations. (*Id.*). Ultimately, after assessing all of the evidence in the record, the ALJ found that Claimant had the RFC to perform a range of light-level work. (Tr. at 20-24).

### A. *Daily Activities*

Claimant argues that the ALJ recited types of activities that she could perform without considering the extent to which she could perform those tasks. (ECF No. 16 at 12-14). In a recent decision, the Fourth Circuit referenced its precedent that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts

13

that support a finding of nondisability while ignoring evidence that points to a disability finding." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 98 (4th Cir. 2020). As relevant to this matter, the Fourth Circuit reemphasized that an ALJ cannot selectively cite evidence concerning the tasks that a claimant can perform while improperly disregarding qualifying or contrary evidence regarding the claimant's ability to perform those tasks. *Id.* at \*11.

In *Arakas*, the ALJ erred by relying on the activities that the claimant could perform, but failing to account for other significant evidence demonstrating the claimant's limited physical capacities. *Id.* Specifically, the ALJ noted that the claimant could use a computer, perform household chores, drive, shop, walk for exercise, cook, make her bed, do laundry and yard work, and paint. *Id.* at \*10. However, the ALJ did not mention or address the claimant's considerable testimony regarding the difficulties that she had performing those tasks, such as the fact that her daughter had to perform most of the housework, as well as the grocery shopping when the claimant was not physically able; and the claimant could not do anything after noon due to fatigue; could only walk for 30 minutes "on a good day," but was "done for the day" after walking; and had to sleep in a neck brace. *Id.* at \*11. The Fourth Circuit concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the record when read as a whole revealed no inconsistency between the two. *Id.* at \*11. The Court found that, if the claimant's qualifying statements were properly considered, it was clear that "she could perform only minimal daily activities that in no way suggested any ability to engage in full-time work on a sustained basis." *Id.* at \*12.

By contrast, in this case, the ALJ explicitly considered Claimant's qualifying

14

statements and fairly considered the record as a whole regarding Claimant's daily activities. The ALJ cited Claimant's testimony that she lived with her mother, who prepared her meals and did the grocery shopping. (Tr. at 21). The ALJ also noted Claimant's statements in her function report that she took care of her dog with assistance from her mother; performed personal care independently, although it took longer than normal; prepared simple meals, but her mother prepared other meals for her; did some cleaning, such as vacuuming and washing dishes, and laundry in moderation; could go out alone, shop in stores, and handle her own finances, but could not drive; often fell asleep watching television; and went to church on Sundays, but did not have many social activities. (Tr. at 22). Overall, the ALJ found that Claimant engaged in "somewhat normal" daily activities and interaction, including performing personal care, preparing simple meals, cleaning, going to church, shopping, and handling her own finances. (Tr. at 23). The ALJ found that Claimant's ability to participate in such activities undermined her allegations of disabling functional limitations. (*Id.*).

Therefore, contrary to Claimant's assertion, the ALJ properly considered the extent to which she could perform daily activities and specifically noted her alleged limitations performing such tasks. Unlike *Arakas* and similar decisions, the ALJ's analysis does not misrepresent Claimant's activities or selectively rely on certain evidence at the exclusion of the overall record. Although Claimant may disagree with the ALJ's analysis and conclusions, she does not identify any material conflicting evidence that the ALJ failed to consider, or any misstatement of the record. Instead, Claimant simply asks the Court to reweigh the evidence and reach a different conclusion than the ALJ. As previously explained, the Court cannot substitute its judgment for the Commissioner. *Hays*, 907 F.2d at 1456. Rather, the Court can only scrutinize the evidence to determine

if it is sufficient to support the ALJ's conclusions. That standard is unequivocally met in this case. Claimant offers nothing to rebut the ALJ's well-reasoned conclusions and specific citations to the record. Therefore, the undersigned **FINDS** that the ALJ's analysis of Claimant's daily activities is supported by substantial evidence.

### B. *Side Effects of Medication*

Claimant next contends that the ALJ did not give her "side effects any mention or consideration in the decision," which rendered the ALJ's consideration of her symptoms "necessarily deficient." (ECF No. 16 at 14). She states that her side effects primarily included "dizziness, drowsiness, fatigue, and difficulty in focus and concentration." (*Id.*). However, the ALJ thoroughly discussed the evidence of record, including Claimant's allegations that her medications caused more frequent bathroom breaks, dizziness, numbness, drowsiness, blurred vision, issues with sunlight, and bruising. (Tr. at 21-22). Further, the ALJ discussed the evidence bearing on Claimant's ability to concentrate, in particular the evidence concerning her daily activities and interaction. (Tr. at 23). The ALJ explained that Claimant did not allege, nor did the record indicate, any mental health impairments, and no mental limitations were established by the totality of the medical evidence. (Tr. at 24).

The ALJ very clearly evaluated the alleged side effects of Claimant's medications and ultimately concluded that Claimant's allegations were not fully consistent with her conservative treatment, mild medical signs and symptoms, "somewhat normal" daily activities, and other evidence. Claimant does not identify any critical conflicting evidence regarding the side effects of her medication that the ALJ neglected to consider. (ECF No. 16 at 14). The ALJ articulated ample support for her RFC and subjective symptom analyses, which are substantiated by the record. For those reasons, the undersigned

16

**FINDS** that the ALJ's analysis of the side effects of Claimant's medications is supported by substantial evidence.

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 14); **GRANT** the Commissioner's request for judgment on the pleadings, (ECF No. 18); **AFFIRM** the decision of the Commissioner; **DISMISS** this action, with prejudice, and remove it from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Thomas v. Arn*, 474 U.S. 140 (1985); *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party,

Judge Faber, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED**: January 24, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge